■ In the Matter of STUDIO THEATRE SCHOOL CORPORATION, Appellant. LILLIAN ROBERTS, as Commissioner of Labor, Respondent. — Appeal from a decision of the Unemployment Insurance Appeal Board, filed August 30, 1982, which held the employer liable for unemployment insurance contributions on the remuneration paid to its directors, assistant directors and designers. The employer, Studio Theatre School Corporation, is a nonprofit organization which produces approximately seven plays each season in the City of Buffalo. Each play runs approximately three weeks. A season normally lasts from September through May. As part of this operation, Studio Theatre engages the services of a director, set designers, lighting designers and, on occasion, an assistant director. The Unemployment Insurance Appeal Board has ruled that these persons are employees and not independent contractors. Studio Theatre has appealed that decision to this court. There should be an affirmance. The question of the existence of an employment relationship is a factual one for the board to determine. Its findings are conclusive if supported by substantial evidence (Labor Law, § 623), although the record may have supported a contrary ruling (*Matter of MNORX, Inc.* [*Ross*], 46 NY2d 985; see, also, *Matter of England* [*Levine*], 38 NY2d 829). Here, we are concerned with the services of professionals, whose duties and responsibilities do not lend themselves to close control over the details of the work or the results produced (see *Matter of Concourse Ophthalmology Assoc.* [*Roberts*], 60 NY2d 734, 736; *Matter of Eastern Suffolk School of Music* [*Roberts*], 91 AD2d 1123; *Matter of Cornell Design Co.* [*Levine*], 47 AD2d 567). The employer, in the case at bar, sets the performance dates and the time period during which rehearsals can be done. Specific scheduling of rehearsals is up to the director. The cast is chosen at auditions which are scheduled by the employer. A "typical" directors' contract, placed in the record , provides that the director shall render services exclusively for Studio Theatre during the life of the contract (usually one play). It incorporates by reference the term of a collective bargaining agreement between the Society of Stage Directors and Choregraphers, Inc., of which all the directors were members, and the League of Resident Theaters, which the employer joined during the audit period. Studio Theatre was required under the collective bargaining agreement to make pension and welfare payments for the directors. The "typical" contract was executed on behalf of the employer by a Neal Du Brock, executive producer. The contract also provided for payment of an agreed sum of money at intervals, partially for a furnished apartment for the director in Buffalo and for a food allowance for each day the director was away from New York in connection with the play at the direction of the producer. There was also a clause providing for the payment of air coach transportation for all trips deemed necessary by the producer. The record reveals that the director's duties include serving as the "overall artistic coordinator of [a] production", staging the play, providing the artistic sense and directing the actors. The director, assistant director, if any, and the designers are integral and essential working parts of the employer's organization. The finding of the board that, while working on the employer's production, the directors and designers are not operating separate and independent businesses but are employees of the Studio Theatre has substantial evidentiary support in the record. There was evidence that each director has his concept of how the play should look, including the set, costumes and lighting. The director relays his concepts to the designers, who then work with those

concepts. The director's word was said to "carry a great deal of weight in the decision making process by the designers". Although on this record, and considering the inferences that might be drawn therefrom, a reasonable person could reach a different conclusion than that found by the board, since the board's determination is based on substantial evidence, no further judicial review is permitted (*Matter of Concourse Ophthalmology Assoc. [Roberts]*, *supra*). Decision affirmed, without costs. Mahoney, P. J., Main, Mikoll, Yesawich, Jr., and Weiss, JJ., concur.